# UNITED STATES DISTRICT COURT

## FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br> v. <br><br> JUAN SANCHEZ-DOMINGUEZ, <br><br> Defendant. | No. 1:19-cr-00219-DAD-BAM <br><br> <u>ORDER DENYING DEFENDANT'S MOTION TO DISMISS</u> <br><br> (Doc. Nos. 14, 17) |

This matter is before the court on a motion to dismiss the indictment in this action brought on behalf of defendant Juan Sanchez-Dominguez. (Doc. No. 14.) A hearing on the motion was held on February 10, 2020 at which Assistant U.S. Attorney Laura Withers appeared for the government and Assistant Federal Defender Matthew Lemke appeared for the defendant. Having considered the parties' briefing and evidence, having listened to the recordings of the immigration court proceedings placed at issue by the motion, and having heard from counsel, the court will deny defendant's motion.

## BACKGROUND

On October 17, 2019, the grand jury returned the indictment in this case charging defendant with being a deported alien found in the United States in violation of 18 U.S.C. § 1326(a) and (b)(1). (Doc. No. 77.) On January 13, 2020, defendant moved to dismiss the indictment on the grounds that his 2003 order of removal was issued in violation of his due

1

process rights and cannot be relied upon to support his prosecution for violating § 1326. (Doc. No. 14.) The government filed an opposition to that motion on January 24, 2020 (Doc. No. 16) and the defendant filed a reply on February 2, 2020 (Doc. No. 17), followed by the government's filing of a sur-reply on February 4, 2020 (Doc. No. 19).

**ANALYSIS**

As noted, defendant Sanchez-Dominguez argues that that his 2003 order of removal, the foundation for the charge of violating § 1326 currently pending against him, was issued in violation of his due process rights and cannot be relied upon by the government. Specifically, he contends that in 2003 he was eligible for voluntary departure relief but that the immigration judge ("IJ") presiding over his removal proceedings failed to adequately advise him of his eligibility, thereby denying him of his right to due process and causing him to be prejudiced because it was plausible that he would have been granted voluntary departure. (Doc. No. 17.) There are a number of stages to the arguments advanced by defendant in support of dismissal and the focus of the arguments appears to have changed somewhat during the course of the briefing. Nonetheless, the first step (and a hurdle the defense must clear to prevail on the pending motion) is premised on defendant's contention that rather than meaningfully advising him of his right to seek voluntary departure, the IJ at defendant's 2003 removal proceeding signaled to defendant that he was not eligible for that relief, thereby discouraging him from applying for voluntary departure. (*Id*. at 2–3.) Because the record before the court belies this contention, defendant fails to clear that first hurdle and his motion to dismiss must therefore be denied.

One district court has summarized the applicable legal standard governing the pending motion as follows:

> The Federal Rules of Criminal Procedure state that "[a] party may raise by pretrial motion any defense, objection, or request that the court can determine without a trial on the merits." Fed. R. Crim. P. 12(b)(1). Rule 12(b)(3) pertains to alleged defects in the indictment and permits a motion to dismiss for "failure to state an offense." *See* Fed. R. Crim. P. 12(b)(3)(v).
>
> "For a defendant to be convicted of illegal reentry under 8 U.S.C. § 1326, the Government must establish that the defendant left the United States under order of exclusion, deportation, or removal, and then illegally reentered." *United States v. Raya-Vaca*, 771 F.3d

1195, 1201 (9th Cir. 2014) (internal quotation marks and citation omitted). "A defendant charged under § 1326 has a due process right to collaterally attack his removal order because the removal order serves as a predicate element of his conviction." *Id.* (internal quotation marks and citation omitted). That right is codified at 8 U.S.C. § 1326(d). *See United States v. Cisneros-Rodriguez*, 813 F.3d 748, 755 (9th Cir. 2015).

To mount a successful challenge to an indictment under Section 1326, a defendant must satisfy 8 U.S.C. § 1326(d), which sets forth three requirements for collaterally attacking the underlying deportation order in a Section 1326 case. Under this section, the defendant must show that (1) he has exhausted administrative remedies to appeal his removal order; (2) he was deprived of the opportunity for judicial review; and (3) the entry of the removal order was fundamentally unfair. *See Raya-Vaca*, 771 F.3d at 1201 (citing 8 U.S.C. § 1326(d)). To show fundamental unfairness, a defendant must establish both that the deportation proceeding violated his due process rights and that the violation was prejudicial. *Id*. If the defendant satisfies the fundamental fairness requirement under § 1326(d), then he satisfies the other two requirements as well. *See Cisneros-Rodriguez*, 813 F.3d at 756; *see also United States v. Gomez*, 757 F.3d 885, 892 (9th Cir. 2014) (noting that "[a] defendant can establish the first two prongs of § 1326(d) by showing that he was denied judicial review of his removal proceeding in violation of due process").

*United States v. Gutierrez-Ramirez*, No. 18-cr-00422-BLF-1, 2019 WL 3346481, at *2 (N.D. Cal. July 25, 2019).

Here, defendant argues that he was not adequately advised of his right to seek voluntary departure and, in fact, was discouraged from applying for such relief by the IJ who essentially informed him he was ineligible for such relief in error. (Doc. No. 17 at 3–4.) The legal standards in the Ninth Circuit governing this specific claim have also been recently summarized by one district court as follows:

"[W]here the record contains an inference that the petitioner is eligible for relief from deportation, 'the IJ must advise the alien of this possibility and give him the opportunity to develop the issue.'" *United States v. Arrieta*, 224 F.3d 1076, 1079 (9th Cir. 2000); 8 C.F.R. § 240.11(a)(2). "The requirement that the IJ inform an alien of his or her ability to apply for relief from removal is mandatory, and failure to so inform the alien of his or her eligibility for relief from removal is a denial of due process that invalidates the underlying deportation proceeding." *United States v. Ubaldo–Figueroa*, 364 F.3d 1042, 1048 (9th Cir. 2004) (internal quotation marks, alterations, and citation omitted); *see also Arrieta*, 224 F.3d at 1079 (explaining that the requirement to advise the alien of the possibility of relief and give him the opportunity to develop the issue

3

> is "mandatory."). The Ninth Circuit has held that this requirement specifically applies to voluntary departure, *see United States v. Arias–Ordonez*, 597 F.3d 972 (9th Cir. 2010) (finding due process violation when IJ failed to inform alien of eligibility for pre-hearing voluntary departure relief); *United States v. Ortiz–Lopez*, 385 F.3d 1202 (9th Cir. 2004) (same), and that the advice must be "meaningful[ ]." *See United States v. Melendez–Castro*, 671 F.3d 950, 952 (9th Cir. 2012) (finding that the alien "was not meaningfully advised of his right to seek voluntary departure"). Indeed, in the Ninth Circuit, an IJ's failure to advise an alien regarding his right to pre-hearing voluntary departure is a due process error and constitutes a valid ground for a collateral attack of an underlying removal in a prosecution under 8 U.S.C. § 1326. *See, e.g., United States v. Ortiz-Lopez*, 385 F.3d 1202, 1204 (9th Cir. 2004) (failure to advise of pre-hearing voluntary departure is due process violation); *United States v. Nungaray-Rubalcaba*, 229 Fed. Appx. 436 (9th Cir. 2007) (same); *United States v. Basulto-Pulido*, 219 Fed. Appx. 717 (9th Cir. 2007) (same); *United States v. Alonza-Mendoza*, 239 Fed. Appx. 330 (9th Cir. 2007) (same); *United States v. Lopez-Menera*, 542 F. Supp. 2d 1025 (N.D. Cal. 2008) (same).

*United States v. Rojas-Osorio*, 381 F. Supp. 3d 1216, 1228 (N.D. Cal. 2019).

The problem for defendant Sanchez-Dominguez is that the record of his own 2003 removal proceedings establishes that he was advised of the possibility of relief from removal by way of voluntary departure as well as of his opportunity to develop that issue. Although, defendant now argues that he was discouraged from seeking voluntary departure because the IJ signaled to him that he was not eligible for that relief (Doc. No. 17 at 3–4), the undersigned has listened to the recordings of those proceedings which belie defendant's claim in this regard. (*See* Doc. No. 16, Ex. 1.)

That recording reflects that defendant's removal hearing on July 28, 2003 was comprised of two segments; the first a group hearing and advisement and the second an individual hearing. (*Id.*) The recording reflects that during the group hearing the IJ explained to the defendant and the others their rights, including their appellate rights. (*Id.*) In addition, those present were specifically advised that they may be eligible for voluntary departure instead of being removed and deported from the United States as well as of the potential benefits to them of voluntary departure as opposed to removal. (*Id.*) They were also advised that: 1) if they were eligible for voluntary departure they would be asked if they had the $7 for bus fare to Mexico; 2) if they did have the required $7, the IJ would ask the government for its position regarding voluntary

departure and, if there was no opposition, voluntary departure would be granted and they could return to Mexico that day; 3) if the government opposed their voluntary departure, their matter would be postponed and set for a voluntary departure hearing within one to two weeks during which time they could assemble any positive information and evidence in support of their request for voluntary departure and that at that next hearing the IJ would weigh the information provided by both sides and make a decision regarding voluntary departure. (*Id.*) All eight of the individuals present, including defendant Sanchez-Dominguez, responded that they understood the IJ's advisements. (*Id.*)

At defendant Sanchez-Dominguez's individual removal hearing, apparently conducted later the same day, the IJ confirmed that the defendant understand all of his legal rights as explained to him earlier that day. (*Id.*) After determining that defendant was subject to removal to Mexico, the IJ asked defendant if he had the $7 for bus fare to Mexico required for voluntary departure.[1] (*Id.*) Sanchez-Dominguez replied "yes" and the government attorney immediately stated: "the government's opposed." (*Id.*) After the government thus stated its opposition to voluntary departure in defendant's case, the IJ, as he indicated he would do during the group hearing, asked Sanchez-Dominguez if he wanted his case postponed for a voluntary departure hearing or instead wanted his case ended that day. (*Id.*) Without hesitation, Sanchez-Dominguez replied that he wished to "end the case today" and thereafter also waived any appellate rights. (*Id.*) Given this record, it cannot be fairly said that the IJ failed to advise defendant Sanchez-Dominguez of the possibility that he was eligible for voluntary departure. Moreover, taking the two segments of the removal hearing together it is clear that the IJ would not have inquired of Sanchez-Dominguez whether he had the bus fare to Mexico unless he was potentially eligible for voluntary departure. Contrary to defendant's suggestion (Doc. No. 17 at 3), the government stated its opposition to voluntary departure in defendant's case before the IJ had an opportunity to ask for their position on that issue. After the government stated that opposition, the IJ did exactly as he had announced he would do earlier in the day, asking defendant Sanchez-Dominguez if he

---

[1] Notably, during the morning group hearing the IJ indicated that he would ask the individuals if they had the $7 for bus fare, if it appeared they were eligible for voluntary departure.

5

wanted a hearing set on the issue of whether voluntary departure relief should be granted and an opportunity to gather relevant evidence and develop the issue. Defendant unequivocally declined that invitation.

There was absolutely no suggestion by the IJ that the defendant was ineligible for voluntary departure relief, nor was defendant discouraged in any way from pursuing that relief. Thus, the record in this case establishes both that defendant received the process to which he was due at his 2003 removal hearing and that this case is distinguishable from those in which a due process violation has been found. *See United States v. Melendez-Castro*, 671 F.3d 950, 954 (9th Cir. 2012) (concluding that the defendant's due process rights were violated because the IJ never asked whether "he wanted to apply [for voluntary departure] and, instead, said that any such application would be futile."); *United States v. Castro-Verdugo*, 671 F. Appx. 407, 408 (9th Cir. 2017) ("*Melendez–Castro* is distinguishable because here there is no indication in the record before us that the IJ prejudged Castro–Verdugo's possible application for relief."); *United States v. Martinez-Gonzalez,* 606 F. Appx. 364 (9th Cir. 2015) ("The Immigration Judge advised Martinez-Gonzalez that he may be eligible for voluntary departure and asked Martinez-Gonzalez whether he would like to have a hearing on voluntary departure. This colloquy was not fundamentally unfair."); *United States v. Rodriguez-Arroyo*, 467 F. Appx. 746 (2012) (due process violated where IJ never mentioned voluntary departure at defendant's individual hearing and, nonetheless signed an order denying an "application for voluntary departure" that was never made nor which the defendant was ever informed he could make)[2]; *United States v. Tejeda-Tovar*, No. CR-19-01182-PHX-JJT (MHB), 2020 WL 248398, at *5 (D. Ariz. Jan. 16, 2020) (concluding that due process was violated where the IJ erroneously told the defendant during removal proceedings that he would "not be eligible for voluntary departure" when he was in fact eligible for such relief); *Rojas-Osorio*, 381 F. Supp. 3d at 1229 (due process violated where the IJ "never asked the Defendant if he wanted to apply for . . . voluntary departure").

/////

---

[2] Citation to these unpublished Ninth Circuit opinions is appropriate pursuant to Ninth Circuit Rule 36-3(b).

6

**CONCLUSION**

For the reasons explained above, defendant's motion to dismiss the indictment (Doc. Nos. 14, 17), is denied.[3]

IT IS SO ORDERED.

Dated: **February 14, 2020**

_____
UNITED STATES DISTRICT JUDGE

---

[3] Because the court has concluded that defendant's due process rights were not violated at his 2003 removal proceeding, it need not address the defendant's remaining arguments.

7